### SOLOMON DUNNING *versus* THOMAS FINSON.

Review of the various enactments relative to the action of forcible entry and detainer.

In a complaint for forcible entry and detainer against a tenant at will, it is not necessary to allege or prove that the relation of landlord and tenant existed between the parties at the time of the service of notice to quit.

Such a tenancy at will as c. 94, § 2, R. S. of 1857, contemplates, may exist, where there is no such relation as would authorize a suit for rent, or confer the respective rights of landlord and tenant.

A. bargained for a house, but had it conveyed to B. as security for a loan, taking a bond from B. to convey to him in payment. The bond expired. C. rented the house of A., and afterwards took a quitclaim of his right, at the same time agreeing orally with B. for a deed from him at a price named. *Held,* that C. was tenant at will, under B., although he had overpaid rent to A.

ON REPORT by KENT, J., April term, 1859.

THIS was an action of FORCIBLE ENTRY AND DETAINER, commenced in the police court for the city of Bangor, and brought into this Court on the pleadings, the defendant pleading the general issue, with a brief statement claiming title in himself.

Jefferson Crocker, being the owner of the premises in question, bargained with Alfred Stetson to sell them to him for $500. Stetson obtained a part of the purchase money, about $300, of the plaintiff, and, by agreement of parties, Crocker conveyed to the plaintiff, March 4, 1854; and, on the same day, the plaintiff gave a writing to Stetson, binding himself to convey the premises to him or his representatives, on payment of the sum borrowed and interest in one year. On Nov. 22, 1856, Stetson quitclaimed his right in the premises to the defendant, who lived upon the premises until April, 1858, when Dunning served upon him notice in due form to quit the premises, and commenced this action, July 16, 1858.

The defendant testified that he held the premises under his deed from Stetson, and had never been tenant at will under Dunning; that he knew when he purchased that Dunning had a deed of the premises, but did not know whether the bond

he gave to Stetson was in force or not; that he took a quit-claim deed only, and " stood in Stetson's shoes;" that he had paid about $225, for Stetson's interest, and expended about $150, in repairs; that, before he bought of Stetson, he talked with Dunning about it, when Dunning said he only wanted his interest, and it was arranged between them that he should pay Dunning ten per cent. interest on $600, then due, and pay the principal when he chose; that Dunning promised to make writings, but did not; that the understanding was, that when the debt was paid to Dunning, witness was to have a deed from him; and that Dunning never called for rent un- til about the time he gave witness notice to quit, when he said he must have interest or rent.

There was evidence that before Finson bargained with Stetson, he hired the house of him, and was to pay the rent in making repairs; that $90 a year was talked of as rent; and that the value of the property was estimated at about $900. Most of the other testimony was in corroboration of the foregoing.

On all the facts in the case, the Court was to render judgment according to the legal rights of the parties.

*Godfrey & Shaw*, for the plaintiff.

The decision in *Woodman* v. *Ranger*, 30 Maine, 180, that a similar process could not be maintained, because there was no allegation in the complaint that the relation of landlord and tenant subsisted between the parties, does not apply to this case, being controlled by subsequent legislation. R. S., c. 94, § 2. The statute making it unnecessary to prove the relation, it is equally unnecessary to allege it. But, if such an allegation is requisite, it is substantially contained in the present complaint.

The deed of Crocker to the plaintiff, together with the notice to quit, constitutes a *prima facie* case. The quitclaim deed of Stetson to Finson furnishes no defence, as no title is shown in Stetson. Dunning's obligation to Stetson to convey to him, on certain payments being made, in one year, is inad-

missible, because no consideration is shown; because it is not a negotiable instrument under which the defendant can claim any rights; because it is not in force, and was not when the defendant bargained with Stetson; and because there is no privity between the plaintiff and the defendant.

Stetson, after the expiration of Dunning's obligation, was only a tenant at sufferance. He had but a naked possession, and no estate which he could transmit. Co. Lit., 57; 4 Kent, 110. He could not place his grantee in any better position than he occupied himself. It was at the election of Dunning, whether to treat the defendant as a tenant at sufferance or at will.

The defendant's tenancy terminated after thirty days notice, and his refusal to deliver possession was unreasonable, and equivalent to a forcible detainer. *Clapp* v. *Paine,* 18 Maine, 264; *Smith* v. *Rowe,* 31 Maine, 212.

This process being designed to restore to owners their property wrongfully withheld, the statute is remedial, and should be construed liberally. 5 Burr., 2694; 4 Kent, 464.

*A. L. Simpson,* for the defendant.

The complaint is defective, in not alleging that the relation of landlord and tenant existed between the parties. *Woodman* v. *Ranger,* 30 Maine, 180; *Sanders* v. *Robinson,* 5 Met., 343; *Howard* v. *Merriam,* 5 Cush., 567, 568. In order to be sustained, the complaint should allege by what tenure the defendant held, and by what right the plaintiff claimed. This it fails to do.

The evidence does not show the relation of landlord and tenant, but that Dunning took a deed for collateral security for his loan, and Stetson held an equitable interest in the premises. It does not appear that either party intended to create a tenancy at will, or subject Stetson or his assignees to be ousted by this summary process, or to a liability to pay rent.

This case is parallel with that of *Dakin* v. *Allen,* 8 Cush., 33. The parties there bore the same relations to each other

as in this case. The Court decided that, although the bond was forfeited, forcible entry and detainer could not be maintained, and that the relation of the parties was similar to that of mortgager and mortgagee. Our Court has determined that this form of action will not lie between mortgager and mortgagee. *Sawyer* v. *Hanson,* 24 Maine, 542. In the case of *Larrabee* v. *Lumbert,* 34 Maine, 79, it was held that a conditional sale for security, although absolute on its face, did not create the relation of landlord and tenant, when the grantor was permitted to remain in possession. Here the deed was absolute on its face, but made only to secure Dunning for money he had loaned to Stetson.

The plaintiff has misconceived his action. He should have brought a writ of possession or ejectment. He would then have got possession of the premises, if his title is good, and the defendant would have had the use and occupation, to repay him in part for his outlay. If this action is maintained, the defendant is further liable to the plaintiff in an action for use and occupation for the whole time. The plaintiff wins all, and the defendant loses all.

If, however, the Court is of opinion that the relation of landlord and tenant existed between the parties, the defendant had occupied them less than a year and a half, and had made repairs which inured to the benefit of the plaintiff, in value beyond the amount of rent which had accrued. The notice to quit, therefore, having been given long before rent became due and unpaid, the action was prematurely brought, and cannot be maintained.

The opinion of the Court was drawn up by

KENT, J.—The questions arising in this case, which, to some extent, require a construction of the provisions of the Act in relation to "forcible entry and detainer and tenancies," (c. 94, R. S.) will be better understood and determined by a brief statement of the various Acts of the Legislature, which preceded the enactment of the Revised Statutes, and which were consolidated and condensed in the chapter first named.

Whatever of doubt or obscurity arises or appears, upon a cursory reading of these provisions, may perhaps be removed, to a considerable extent, by the examination of this prior legislation, thus embodied.

The process of forcible entry and detainer was originally exactly what the words mean; viz.,—a *forcible* entry, or a *forcible* detainer. This remedy was authorized only where the entry or holding was by force and violence, or threats of violence, sufficient to deter the owner from entering. This was the law of Massachusetts at the time of the separation. *Commonwealth* v. *Dudley*, 10 Mass. 403.

In practice, this statute, under the construction given to it, was found to be insufficient to give a peaceable and speedy remedy to the owner to recover possession of premises unlawfully detained by tenants whose estate had been determined. It required, not merely that such estate should be determined, and the holding over unlawful, but that the owner should attempt to take actual possession against the will of the tenant, and that he should be assaulted, or threatened with such violence as would deter a reasonably firm man from proceeding in his attempt.

When this State was organized, the first Legislature, in reënacting the statute of Massachusetts, added a provision that, when *any tenant* held over unlawfully, and refused to quit, after thirty days notice in writing, he should be liable to this process of forcible entry and detainer, provided he had not been in quiet possession three whole years together, next before the notice. Statutes of 1821, c. 89. This proviso, as to three years possession, was repealed in 1847, c. 4. The form of the writ and summons, as given in c. 63 of the statutes, remained the same as under the old statute of Massachusetts,— containing only the allegation of force and a strong hand. But the intention of the Legislature was clear, to give this remedy where the holding over was unlawful, and due notice had been given, without allegation or proof of any attempt to take actual possession, or of force used or threatened.

This provision was reënacted in the statute of 1824, c. 268, which only changed the form of proceeding before the justices who had cognizance.    The same was incorporated into the Revised Statutes of 1841, c. 128, § 5.

A question arose whether, under a process following the forms before referred to, and which alleged a forcible entry or detainer only, the plaintiff could prove a case within the section giving remedies against a tenant who held over where no force was used.    This Court, in the case of *Woodman* v. *Ranger*, 30 Maine, 180, decided that he could not, and non-suited the plaintiff, because in his complaint he had not set out a tenancy, and a holding over and notice to quit, and that he was landlord and the defendant his tenant.

The Legislature, the same year, and probably after the decision in the above case, passed an Act providing that this process may be maintained, "although the relation of landlord and tenant does not exist between the parties."    The Act does not define what cases it intended to include.    It is not, in its terms, limited to the fifth section, or to cases of holding over by a tenant, whether at will or by written lease.    It covers the whole chapter, and gives the remedy without limitation.    The fair construction, however, doubtless is, that when a tenant wrongfully holds over, the process may be applied, although the relation of landlord and tenant, strictly speaking, does not exist.    This point will be considered hereafter more fully.

The next statute was in 1850, c. 160, and provided, in substance, that in all cases where a lessee was in under a written lease, and a time fixed therein for its termination, or when the term had been forfeited by breach of condition, this process might be used at once, without any notice to quit.    It also introduced the entirely new provision that this process may be used " against a disseizor of lands," without any such notice.

In 1853, another statute was passed on this prolific subject, which in the first section makes provision for the case of a tenancy at will, that one notice should be sufficient, and

should fix a time for the termination of the tenancy, to be served thirty days before that time; unless the tenant should have paid rent which accrued after the termination of his tenancy, or no rent was due when notice is given, and in the latter case the tenancy should not be terminated "until rent shall be due." The remainder of this Act has relation to proceedings in Court, after process has been duly commenced.

In the revision of the statutes, in 1857, these various Acts were consolidated and condensed in c. 94; and that Act contains the law now in force, and under which the process in this case was instituted. The Legislature in this chapter has incorporated the substance of the various Acts before referred to, and has extended the application of this summary process, from the original limitation to cases of actual force, to the following cases, which can be sustained without proof of such actual or threatened force.

1. Against a disseizor, who has not acquired any claim by possession and improvement. This qualifies the general provision in the Act of 1853, which gave the process against any disseizor, whether he had any claims for improvement or not. With this single qualification, this provision seems to include all cases of actual disseizin where a writ of entry would lie. But it is unnecessary to consider or decide upon the construction of this provision, if there can be any doubts raised.

2. Against a tenant, or sub-tenant, holding under a written lease or contract, at the expiration or forfeiture of the term, without notice, if instituted in seven days after the expiration or forfeiture.

3. Against a tenant at will, whose tenancy has been terminated *in the manner set forth in the second section.*

This section applies to all tenancies at will, and contemplates that such tenancy may exist where the relation of landlord and tenant, strictly speaking, does not exist. This is evident from the language used in reference to rent,—"if no rent is due, when *a* rent is payable,"—thus distinguishing the cases of tenancy at will where rent is reserved or due, and those where no rent is reserved or ever payable. The pro-

Dunning *v.* Finson.

vision then follows, that, in case of a tenancy at will, (for the whole section applies only to such tenancies,) this process may be maintained "without proof of any relation of landlord and tenant." This language is taken from the Act of 1849, before referred to, and is here applied to cases of tenancies at will. In the first Act, as before stated, it was not limited to such cases.

The collocation of the words of the last sentence, in the second section, is unfortunate. The words above quoted, in relation to landlord and tenant, should precede the words that relate to notice. The change would make the sentence read, "when terminated, the tenant shall be liable to the process aforesaid, without proof of any relation of landlord and tenant, and without any further notice, unless he has paid after service," &c. The qualification applies to the notice, and not to the relation of landlord and tenant.

The fair construction of the section leads to the conclusion that it is not absolutely essential to allege or prove that the relation of landlord and tenant existed at the time of the notice. If the tenancy is at will, that tenancy may be terminated by a written notice. Such a tenancy the statute contemplates when no such relation exists as would authorize a suit for rent, or as would impose the respective rights of such a relation. The Legislature probably used the words "landlord and tenant" in their restricted sense, as applicable only to the case where rent is payable, either by an express or implied agreement. The language, however, is very broad, "without proof of *any* relation" of landlord and tenant. The case of mortgager and mortgagee rests upon the peculiar provisions of the statute as to the mode of entry, and the Legislature did not probably contemplate that this process should apply ordinarily to such a case, either under the provision in relation to disseizin or that in relation to tenants at will.

There are cases where the law seems to hold that such a tenancy at will may exist, where no contract or relation of landlord and tenant as above defined exists. In *Bryant* v. *Tucker*, 19 Maine, 386, it was held, that, where a debtor re-

mains in possession of land levied upon, he becomes the tenant at will of the creditor who levied. "If he resists his entry, he may treat the tenant as a disseizor at his election." In *Dakin* v. *Allen,* 8 Cush., 34, SHAW, C. J., says—"It is sometimes said that one who is in under a contract of sale is a tenant at will to the owner. In a certain sense he is a tenant at will. He is like a mortgager in relation to a mortgagee, because he is under no obligation to pay rent."

The case of *Proprietors of No.* 6 v. *McFarland,* 12 Mass. 325, is a case somewhat resembling the case at bar, where there was an agreement to sell, and the party proposing to purchase was in possession. The Court held that the relation was that of tenant at will—being at the will of both parties. The case of *Bennock* v. *Whipple,* 12 Maine, 346, is to the same effect.

The cases cited by the counsel for the defendant, from the Reports of the decisions in Massachusetts, will be found, on examination, to be based on the language of the statutes of that Commonwealth; and that language is more restricted than that used in our statutes. In Massachusetts, the process in question is limited to cases where *lessees* of land hold possession of the *demised* premises without right, after the determination of the lease. See *Larned* v. *Clark,* 8 Cushing, 31, where the section is quoted. The remedy there is applicable only where the relation of landlord and tenant exists, and is clearly established. It is based on that relation entirely.

In the case before cited from the 8th of Cushing, (*Dakin* v. *Allen,*) and which is relied upon by defendant as similar in its facts to the case at bar, the Court admit that, in a certain sense, the respondent held as tenant at will; but, because it did not appear that he held as *lessee* of the *demised* premises, it was adjudged that his defence did not come within the language of the statute. The relation of landlord and tenant must be proved.

In the case of *Howard* v. *Merriam,* 5 Cushing, 564, SHAW, C. J., reviews all the statutes of Massachusetts on this vexed

subject, and traces the changes by which the original pro-
vision, giving the remedy to *any person* who had the right of
possession, against *any* party in possession without right,
whether the relation of landlord and tenant had existed or
not, as decided in *Sackett* v. *Wheaton,* 17 Pick., 103,—had
been restricted to the case of a lessee where the relation of
landlord and tenant existed.

The opinion in that case is clear and discriminating, and
exhausts the subject.  Indeed, we may truly say of that eminent
jurist, that, whether discussing the refined and subtle doc-
trines touching the realty, or the more liberal and expansive
principles of commercial law—or those arising in the broad
field of equity jurisprudence—or great controverted ques-
tions of Constitutional law—or coming, as in this case, to the
minute dissection, comparison and construction of statutes on
a single subject—*" Nullum quod tetigit non ornavit."*

The cases in Massachusetts cannot control the plain lan-
guage of our statute on this subject.  Wherever a case of a
tenancy at will existed, however created, and whether the
relation of landlord and tenant existed or not, and this ten-
ancy has been terminated by the written notice specified, this
process will lie for the owner to obtain possession.  It will
not lie, under this section, unless the tenancy is terminated
in the mode pointed out, viz.—by a written notice fixing the
time for the termination of the tenancy.  If terminated in
any other way, as it may be, the party must resort to the
original mode, involving the allegation of force, or to his
writ of entry—or to the first mode specified in this statute,
if he can sustain the allegation of disseizin against the per-
son holding over.

The statute does not include, in terms, a tenant at suffer-
ance, and probably for the reason given by SHAW, C. J., in 5
Cushing, 571;—"If one in possession of land is a mere ten-
ant at sufferance, he is bound to go out without notice on the
entry of the landlord.  If the landlord *permits him to remain*,
and especially if he receives rent of him, then he becomes
a tenant at will, and his rights and liabilities are regulated

accordingly, by the provisions of the statute." A tenant at sufferance can hardly be called a tenant at all, as his holding is without right of any kind. When the occupancy is merely permissive, the tenancy is at will. *Doe* v. *Wood*, 14 M. & W. 682.

We now come to the application of these principles to the case before us. The facts, in brief, are that Crocker owned the premises—he agreed with Stetson to sell them to him— Stetson arranged with the plaintiff Dunning, to advance some money to enable him to pay Crocker—by agreement Crocker made an absolute deed to plaintiff Dunning—and Dunning, on the same day that Crocker deeded to him, gave a writing to Stetson, agreeing therein to give Stetson a deed of release of the premises if he paid him a certain sum and interest, in one year from date. Stetson went into possession under agreement or understanding with Dunning, not in writing, that he should have such possession, with the privilege of letting—and, if he could sell for more than he owed Dunning, he could have all over. After the expiration of the year named, Stetson let the defendant in, to pay as rent ninety dollars per year in repairs, or that sum was talked of. After this, Finson, the defendant, made most of the repairs, and then went into posssession, and soon after, Finson and Stetson negotiated for a sale; which resulted in a bargain at a certain rate, and a quitclaim deed from Stetson to Finson of his interest in the premises. All parties knew that Dunning had the title, and the idea was entertained that he only wanted his money and interest. Finson, the defendant, saw Dunning before he concluded the bargain, and consulted with him as owner—understood all he wanted was his money— but no writing passed between them.

The question here is, what was the relation existing at the time this process was instituted? The writing given to Stetson by Dunning was not a defeasance and could not operate as a mortgage, because it was not under seal, and because it was not given to Crocker, the grantor in the deed, but to Stetson, a third party. At the end of the year all

claim in law, under that writing, was ended, and the plaintiff became, if he was not before, absolute owner of the premises, clear from all legal or equitable claims. Even during the year, according to the cases cited, in reference to agreements to purchase, Stetson, being in by assent, was tenant at will of Dunning—and thus continued until the defendant took possession.

What was the relation of defendant to Dunning? He was not in adversely to Dunning. His deed from Stetson was but a quitclaim of any interest in law or equity which Stetson might have, and he knew of Dunning's title, and recognized it, and negotiated with him about it. It was not a case of adverse possession, as in *Larrabee* v. *Lumbert,* cited by defendant—but a case where, with a full understanding of all the facts, Finson, as he himself expresses it, "stood in Stetson's shoes." He also says, that the talk he had with Dunning was to the effect that he was to reduce the debt due to exactly six hundred dollars, and pay him ten per cent. interest on the sum, and *"have it as long as 1 paid that."* He says Dunning agreed to put it in writing, in form of a bond, but afterwards declined to do it. He also says that Dunning "said nothing about rent, *until about the time* he warned me out, and then he said he must have his interest or some rent."

The substance of all this seems to be, that Finson entered, so far as Dunning is concerned, under a new verbal agreement to purchase, with the right to remain as long as he paid interest—thus recognizing Dunning's title, and going in under him. The verbal agreement could have no greater effect than a tenancy at will. It is clear that there was *some* existing relation,—it was not adverse, amounting to a disseizin—not a written lease—but was a tenancy at will, and not merely at sufferance.

It is true that Finson says, in his testimony, that he was never tenant at will under Dunning, but claimed under his deed. But the law must determine his relation, from all the facts,—and his opinion of his legal relation cannot alter the facts or the law.

The defendant objected to the complaint and warrant, because it was not therein alleged that the relation of landlord and tenant had existed, nor that the entry and detainer were forcible. The considerations and authorities, before referred to, show that, under our statute, neither of these allegations need be made or proved in a case of a tenancy at will.

The complaint alleges that the premises belonged to plaintiff—that defendant had a lawful entry—that his estate was determined on a certain day—and that a written notice, required by statute, was given in due time, notifying defendant that his *tenancy* would end and determine on the day named, and that he refuses to quit.

Under this process we think the plaintiff might prove the facts which establish a tenancy at will, terminated according to the statute,—and that he has proved them.

> *Judgment for plaintiff, for possession of*
> *the premises described in his complaint.*

TENNEY, C. J., and APPLETON, CUTTING, MAY, and DAVIS, J. J., concurred.